UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Gary Dubose Terry, # SK-5054,<br><br>        Petitioner,<br><br>vs.<br><br>William R. Byars, Jr., *Commissioner, South Carolina Department of Corrections*;<br>Wayne C. McCabe, *Warden of Lieber Correctional Institution*,<br><br>        Respondents. | ) C/A No. 4:12-1798-SB-TER<br>) [*formerly* Misc. No. 3:12-0111-SB-TER]<br>)<br>)<br>)<br>)<br>)    **ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

This is a counseled habeas corpus action filed pursuant to 28 U.S.C. § 2254 by an inmate on Death Row in the South Carolina Department of Corrections. On September 21, 1997, the Court of General Sessions for Lexington County sentenced Petitioner to death for murder, thirty years for first-degree burglary, thirty years for first-degree criminal sexual conduct, and ten years for malicious injury to a telephone. Petitioner's convictions arise out of the murder of Urai Jackson on or about May 24, 1994. *See State v. Terry*, 339 S.C. 352, 529 S.E.2d 274 (2000), *cert. denied*, *Terry v. South Carolina*, 531 U.S. 882 (2000). Petitioner filed an application for post-conviction relief (Case No. 2000-CP-32-3470) on November 30, 2000. The Court of Common Pleas for Lexington County denied relief in the post-conviction case on February 18, 2009. The Supreme Court of South Carolina affirmed the denial of post-conviction relief on August 29, 2011. *Terry v. State*, 394 S.C.

62, 714 S.E.2d 326 (2011), *cert. denied*, *Terry v. South Carolina*, 182 L.Ed.2d 179, 132 S.Ct. 1548 (2012).

On April 5, 2012, the Honorable Sol Blatt, Jr., Senior United States District Judge, granted the motion for stay of execution and motion to appoint counsel. Judge Blatt also granted Petitioner's Motion for Leave to Proceed *in forma pauperis*. On July 5, 2012, the undersigned directed Respondents to file an Answer.[1]

Counsel for Petitioner on June 29, 2012, filed the Petition and a Motion to Stay Proceedings pursuant to the holding in *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (allowing stays of habeas cases in limited circumstances), so that Petitioner could exhaust several unexhausted grounds via a contemporaneously-filed application for post-conviction relief (Case No. 2012-CP-32-2718) in the Court of Common Pleas for Lexington County. Counsel for Respondents on July 16, 2012, filed a response in opposition to the motion to stay. Counsel for Petitioner filed a reply on July 25, 2012. Respondents' supplemental filing (ECF No. 30) on August 6, 2012, indicates that, in the pending post-conviction action, Respondents have filed a return and a motion to dismiss (ECF No. 30-1) and a proposed order for use by the Court of Common Pleas (ECF No. 30-2).

Petitioner seeks to exhaust grounds designated as Grounds II through V of his habeas petition filed in this case. Ground II alleges an actual conflict of interest on the part of Isaac McDuffie Stone, one of Petitioner's trial counsel. This ground relates to Mr. Stone's allegedly undisclosed representation of the State of South Carolina and numerous law enforcement agencies. Ground III is a claim of ineffective assistance of counsel based on trial counsel's failure to conduct an adequate

---

[1] Under Local Civil Rule 73.02(B)(2) (DSC), pretrial proceedings in this action have been referred to the undersigned United States Magistrate Judge.

or appropriate voir dire and appropriately object to preserve the issues for appellate review. Ground IV concerns trial counsel's failure to develop evidence of a "guilty but mentally ill" defense. Ground V is based on counsel's failure to object to testimony by Petitioner's ex-spouse that Petitioner raped her.

### *Discussion*

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts routinely dismissed without prejudice habeas petitions containing a mixture of exhausted and unexhausted claims, pursuant to *Rose v. Lundy*, 455 U.S. 509, 518–19, 522 (1982) (requiring "total exhaustion" of claims).[2] That practice was substantially changed upon the passage of the AEDPA as a result of the one-year statute of limitations contained within the AEDPA. *See* 28 U.S.C. § 2244(d). Generally, a habeas petitioner who presents a mixed-petition may proceed with the exhausted claims with the unexhausted claims being dismissed, or dismiss the entire petition to return to state court to exhaust the unexhausted claims. *See note 2, supra.* However, when faced with a mixed petition, district courts maintain the discretion in limited circumstances to stay the federal habeas action while maintaining it on its docket to allow a

---

[2] Dismissal of a "mixed petition" can result in the application of the AEDPA's one-year statute of limitations to a petitioner's claims. *Duncan v. Walker*, 533 U.S. 167 (2001) (filing of federal habeas petition does not toll the limitations period for filing a timely petition under 28 U.S.C. § 2254). Alternatively, a petitioner can proceed with a federal habeas claim of only those claims that have been exhausted with a dismissal of any unexhausted claims. *See Rose v. Lundy*, 455 U.S. at 522. Of course, the unexhausted claims would later become subject to the successive petition standards under the AEDPA. *See* Rule 9, Rules Governing Section 2254 Cases in the United States District Courts: "Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2243(b)(3) and (4)."

petitioner to return to state court to exhaust unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 276–77 (2005)(citing *Clinton v. Jones*, 520 U.S. 681 (1997)("district court has broad discretion to stay proceedings as an incident to its power to control its own docket"). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. American Water Works & Electric Co., Inc.*, 299 U.S. 248, 254 (1936). That discretionary authority to stay mixed petitions in habeas cases, however, "must be compatible with AEDPA's purposes." *Rhines*, 544 U.S. at 276.

One of the AEDPA's purposes is "to further the principles of comity, finality, and federalism." *Duncan v. Walker*, 533 U.S. 167, 178 (2001)(citing *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). Consistently, one of the its purposes is "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Rhines*, 544 U.S. at 276 (internal citation omitted). The one-year "limitations period quite plainly serves the well-recognized interest in the finality of state court judgments" by restricting the time within which to seek federal habeas review. *Id.* (internal quotations and citations omitted). The tolling provision in §2244(d)(2)[3] "balances the interest served by the exhaustion requirement and the limitation period." *Id.* The "AEDPA thus encourages petitioners to seek relief from state courts in the first instance by tolling the 1-year limitations period while a "properly filed" application for State post-conviction review is pending." *Id.* "This scheme reinforces the importance of *Lundy's* 'simple and clear instruction to potential

---

[3] §2244(d)(2) provides: The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

litigants: before you bring any claim to federal court, be sure that you first have taken each one to state court." *Id.* (citing and quoting *Lundy*, 455 U.S. at 520).[4]

Staying a federal habeas action while a petitioner returns to state court to exhaust unexhausted claims causes delay which frustrates the statute's objective of encouraging finality and undermines the statute's goal of "streamlining" federal habeas actions by diminishing the incentive to exhaust all claims in state court before filing a federal habeas petition. *Id.* at 277. A stay is appropriate, however, when there is good cause for the failure to exhaust, the unexhausted claims are not plainly meritless, and there are no intentionally dilatory litigation tactics by the petitioner. *Rhines*, 544 U.S. at 277–78.[5] The Court reasoned that in such circumstances the petitioner's interest in obtaining federal review outweighs the twin interests of speedy review and finality. *Id.*

Petitioner asserts there is good cause in this case based on his dependence upon the competence and judgment of his trial counsel and PCR counsel. He asserts that his trial attorney and PCR counsel committed error. Specifically, he contends that trial counsel committed error as set forth in his Grounds II through V of his habeas petition. He asserts that PCR counsel "failed to conduct an adequate and independent investigation to determine the existence of claims for relief based on evidence not contained within the record generated at trial and failed to present meritorious issues to the PCR court," as set forth in Grounds II through V of the habeas petition.

---

[4] The Court in *Lundy* also noted, "[e]qually important, federal claims that have been fully exhausted in state courts will more often be accompanied by complete factual record to aid the federal courts in their review. *Cf.* 28 U.S.C. §2254(d)(requiring a federal court reviewing a habeas petition to presume as correct factual findings made by a state court)." 455 U.S. at 519.

[5] The Court stated it would likely be an abuse of discretion to deny a stay if a petitioner shows good cause, potentially meritorious unexhausted claims, and no indication of intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 278.

A. Good Cause

To satisfy the first part of the *Rhines* test, a petitioner must show that there was good cause for failure to exhaust the claims in state court. *Rhines*, 544 U.S. at 277 ("stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."). *Rhines* does not define good cause. Petitioner suggests that the requirement is not a particularly demanding one, citing to *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). *Pace* addressed whether or not a state post-conviction relief petition denied as untimely would qualify as "properly filed" under the federal habeas tolling statute, 28 U.S.C. §2244(d)(2). *Id.* at 410. Addressing in dicta a situation where a petitioner is pursuing a state post-conviction matter about which the petitioner has a "reasonable confusion" as to whether it is timely filed (thus, whether it will be considered "properly filed" under the AEDPA), the Supreme Court suggested as a possible solution filing a "protective" federal habeas petition and seeking a *Rhines* stay. *Id.* at 416. The Court noted that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Id.* The discussion in *Pace* does not address circumstances involving a mixed petition, but does indicate that a "reasonable confusion" about the timeliness of the filing in state court ordinarily would be "good cause" for failure to exhaust.[6]

Petitioner contends that one of his trial counsel, Duffie Stone (Stone), failed to disclose that he had an actual conflict of interest[7] in representing Petitioner while "simultaneously representing

---

[6] *Cf. Coleman*, 501 U.S. at 753 (negligence on the part of a prisoner's postconviction attorney generally does not qualify as "cause" for procedural default).

[7] When the right to counsel exists, a defendant has a right to effective assistance of counsel who
(continued...)

6

the State of South Carolina and numerous law enforcement agencies involved in petitioner's prosecution and capital sentencing" proceeding. Petitioner argues the conflict issue of his trial attorney was not raised by his PCR counsel because they failed to investigate the issue and were ineffective. Petitioner submitted evidence in support of his argument as discussed below[8].

In a state PCR hearing for another defendant, Aleksey, whom Stone represented, Stone testified that he had clerked for Judge Sydney Floyd[9], worked for the Fifth Circuit Solicitor's Office and the Sentencing Guidelines Commission. As part of his practice from 1994-2001, Stone was an attorney for the Insurance Reserve Fund (IRF)[10] and represented the State of South Carolina and various state agencies including the South Carolina Department of Corrections, the South Carolina Department of Probation, Parole, and Pardon Services, Richland County, and the City of West Columbia. Petitioner asserts that it is unclear what percentage of his practice was devoted to IRF work, but, in the Aleksey PCR hearing, Stone testified it was a "large bulk" of his practice. Stone testified in the Aleksey hearing that prior to May 1998, he had represented the Department of Corrections and SLED. In this habeas petition, Terry argues that his counsel "have also been able to determine that Stone appeared in this Court as counsel for the Department of Corrections and/or its employees in a number of cases that occurred before or during the time period of Stone's

---

[7](...continued)
is free from conflicts of interest. *Cuyler v. Sullivan*, 446 U.S. 335,348-50 (1980). *See also Strickland v. Washington*, 466 U.S. 668 (1984). If it is shown that a conflict existed that adversely effected performance of counsel, prejudice is presumed. *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002) *Id*.

[8] *See* Petition for Writ of Habeas Corpus By a Person in State Custody (ECF Doc. 16) pp. 17-22.

[9] Judge Floyd was the trial judge for Petitioner and appointed Stone to represent Petitioner.

[10] *See* South Carolina Code §§ 38-13-180, 1-11-140, *et seq.*

representation of Terry. He also served as counsel for the West Columbia Police Department and for Richland County or the Richland County Sheriff's Department and/or its employees." Petitioner attached excerpts from the Aleksey PCR hearing. Petitioner argues Stone never informed him of his conflict (Affidavit of Gary Terry, Exhibit 32) and never informed Petitioner's lead counsel, Ms. Fullwood, (Affidavit Exhibit 1) even though agents for SLED, Stone's former and simultaneous client, were involved directly in the evidence collection and processing and testified during trial and Stone conducted some cross-examination of a SLED expert.[11]

Petitioner argues that this issue has not been exhausted in state court because his initial PCR counsel provided ineffective assistance of counsel under the standards of *Strickland*. Petitioner asserts that PCR counsel were aware of the conflicts but did not raise them in his initial PCR. Further, he has raised the issue in a second application for PCR filed June 29, 2012.

Along with the petition, Petitioner submitted an affidavit from his initial trial counsel, Elizabeth Fullwood, who attests that she represented Petitioner at trial in 1997, and that Stone was her co-counsel appointed by the trial judge. Fullwood asserts that she had requested the appointment of local counsel to act as co-counsel but the judge declined and appointed Stone. Fullwood states that "it was unusual for someone to be appointed who was not local counsel. My understanding was that Mr. Stone had clerked for Judge Floyd, and Judge Floyd was helping him start up his practice." (Fullwood affidavit, Exhibit 1). Fullwood attests that she does not believe she knew that Stone was simultaneously employed as a part-time solicitor in the 14th Circuit or that he also represented

---

[11] Petitioner asserts also that during the time the PCR proceedings were pending, Stone represented the South Carolina Supreme Court and the South Carolina Attorney General in Federal Court. (*Rosenburg v. State of South Carolina* 0:02-cv-2867-MBS). (Footnote 13, p. 21 of petition).

various governmental entities as an attorney for the Insurance Reserve Fund, including the Richland County Sheriff's Department. Had she known, Fullwood attests she would have been concerned about his employment with the IRF, particularly with the representation of the Richland County Sheriff's Department, as some of the aggravation witnesses in sentencing worked for that agency. As she was unaware of the potential conflict issues, she attests she believes Petitioner was also unaware.

Petitioner submitted the affidavit of James A. Brown, Jr., who attests that he is an attorney in Beaufort, South Carolina, and that he and Lisa Armstrong (one of Petitioner's PCR counsel) were co-counsel for another inmate on death row. Brown attests that previously he represented Bayan Aleksey, another inmate on death row, in postconviction relief who was represented by Stone at trial. They raised the issue of Stone's conflict, both as a part-time solicitor in the 14th Circuit and in his position as an attorney for the IRF, during the capital trial proceedings of Aleksey, in postconviction relief. Brown attests that he recalls discussing Stone's conflict and his employment with Lisa Armstrong while she was representing Terry. Brown states that to the best of his recollection, they would have discussed this around July 2003. Brown further attests that he also spoke to Wayne Floyd about this issue, although he does not recall the exact date and contacted him at the urging of Brown's client, Aleksey. (Brown affidavit, Exhibit 9).

Petitioner also submitted the affidavit of Melissa ("Lisa") Armstrong, who attests that she was one of the attorneys appointed to represent Gary Terry for his PCR proceeding along with Wayne Floyd who was lead counsel. Armstrong attests with regard to the conflict issue that she was aware that Stone had some connection with the IRF, but they did not raise that issue during Terry's PCR proceeding. Armstrong attests that she was not aware that Stone was also employed as a part-

time solicitor in the 14th Circuit during his representation of Terry. Armstrong further attests that they did not raise the issue of Stone's conflicts at the PCR proceeding and does not "recall exactly the extent to which she was aware that Stone had a prosecutorial role during his defense of Terry", but did learn later that Stone was heavily involved working to defend law enforcement officials. Armstrong asserts that had she been aware of Stone's extensive involvement in this area, she would have raised it during PCR. (Armstrong affidavit, exhibit 26).

Petitioner submitted the affidavit of H. Wayne Floyd, Terry's co-counsel with Lisa Armstrong in his PCR proceeding. Floyd attests that he does not recall meeting with Stone and was unaware that Stone was, during his representation of Terry, also employed as a part-time solicitor for the 14th Circuit, nor was he aware that he was representing government entities, including some of the law enforcement agencies involved in Gary Terry's trial, through his contract work with the IRF. Had he been aware of these employments, they would have raised that as an issue during the PCR relief action. (Floyd affidavit, exhibit 25).

Gary Terry submitted his affidavit attesting that he was represented by Elizabeth Fullwood and Duffie Stone at trial. Terry asserts that he was unaware that Stone was also employed as a solicitor for the 14th Circuit, nor was he aware that Stone was representing the State of South Carolina, or governmental agencies, including the SCDC, Richland County, the Richland County Sheriff's Department, and SLED who offered witnesses who testified against him during his trial. (Terry affidavit, Exhibit 32).

Both parties cite to the decision of the Supreme Court in *Martinez v. Ryan*, 182 L.Ed.2d 272, 132 S.Ct. 1309, 1320 (2012), where the Supreme Court in a majority opinion joined by seven Justices, held that, "[w]here, under state law, claims of ineffective assistance of trial counsel must

be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."[12] Finding that the collateral proceeding under Arizona law was the initial review of an ineffective-assistance claim, it found the initial-review collateral proceeding was equivalent to a direct appeal. The Court reasoned that because the ineffective assistance on direct appeal can constitute "cause"[13] for default, where the collateral proceeding is the equivalent of a direct appeal, ineffective assistance can qualify as cause for default, as well.[14] Thus, the Court recognized a narrow exception to *Coleman*: "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default[15] of a claim of ineffective assistance at trial." *Id*. At 1315.[16]

---

[12] By way of background, the Court in *Coleman v. Thompkins*, 501 U.S. 722 (1991), held that an attorney's errors, generally, in a postconviction proceeding, collateral review, do not qualify as "cause" to overcome a procedural default in a federal habeas proceeding. The Court based its reasoning on agency principles. *Id*. at 1317 (principal bears the risk of agent's negligence).

[13] *See Martinez*, 132 S.Ct. 1317 (citing *Coleman*, 501 U.S. at 745)("If the attorney appointed by the State to pursue direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the state's procedures and obtain an adjudication on the merits of his claims.")

[14] This "pre-trial" exercise of discretion to stay this case is not intended to be a finding that Petitioner meets the "cause" necessary to overcome a procedural default for purposes of this habeas petition. It appears that such a determination would necessitate a factual finding based on the limited record contained here. Clearly, however, for purposes of this motion it is not plainly meritless.

[15] The Court noted that ineffective-assistance claims often depend on evidence outside the trial record. *See Id*. at 1318. Petitioner's unexhausted claims presented in this action rely on evidence not contained in the state court record. *Cullen v. Pinholster*, 179 L.E.2d 557, 131 S.Ct. 1388 (2011), limits the circumstances in which district courts may hold evidentiary hearings and when they may consider evidence produced at those hearings. *Pinholster* restricts federal habeas consideration to evidence contained in the state court record because federal review of a claim governed by §2254(d) "is limited to the record that was before the state court that adjudicated the
(continued...)

The court cannot find under the facts presented that state court remedies are unavailable to Petitioner. The ultimate uncertainty of the state court's disposition of the claim qualifies for good cause under *Rhines*, based on the limited factual record presented. Thus, the AEDPA's purpose of finality is lessened under these circumstances. Additionally, its purpose of comity is furthered by allowing review by the state court first.

B. Plainly Meritless

The second part of the *Rhines* test is that the claim or claims must not be meritless. *Rhines*, 544 U.S. at 277 (2005) ("even if a petitioner had good cause for [failing to present his claims first to the state courts], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."). Respondents do not contest that the grounds for relief are substantively not "plainly meritless." However, they argue that the grounds for relief are in effect

---

[15](...continued)
claim on the merits." *Id.* at 1398. "It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id* at 1399. Therefore, under §2254(d) "evidence later introduced in federal court is irrelevant." *Id.* at 1400. *Cf.* 28 U.S.C. §2254(e). It is not necessary or appropriate at this stage to decide whether or not any evidence submitted in this action should otherwise be considered by this court for other purposes. The affidavits submitted are considered for the sole purpose of determining whether or not a stay is appropriate.

[16] Whether or not a convicted person has a right to effective counsel in initial collateral review which provide the first occasion to raise a claim of ineffective assistance of trial counsel like that contained under South Carolina procedure, remains unanswered. *See Martinez*, 132 S.Ct. at 1315,1313 ("While petitioner frames the question in this case as a constitutional one, a more narrow, but still dispositive, formulation is whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding). *Cf* Rule 71.1(d), S.C.R.Crim.P (If, after the State has filed its return [in post-conviction relief action], the application presents questions of law or fact which will require a hearing, the court shall promptly appoint counsel to assist the applicant if he is indigent. . . ).

procedurally "plainly meritless" because they are subject to dismissal as a successive post-conviction petition and barred by the applicable state limitations period.

Respondent argues that the pending post-conviction case (Case No. 2012-CP-32-2718), which was filed to raise Grounds II through V in state court, is successive. The State of South Carolina allows a second or subsequent application in limited circumstances. *See* S.C. Code Ann. §17-27-90 (Supp. 2011); *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392, 394 (1991) (holding that an allegation that prior PCR counsel was ineffective is not *per se* a sufficient reason allowing for a successive PCR application). Nonetheless, although successive PCR cases are disfavored by courts of the State of South Carolina, they are not absolutely precluded. *Id*, at 450 (successive application can be considered if "sufficient reason" why the new grounds were not raised before). *Williams v. Ozmint*, 380 S.C. 473, 671 S.E.2d 600, 602 n. 1 (2008) ("In fact, Petitioner's PCR application mentioned above was successive. The PCR court allowed it to proceed on the merits finding that Petitioner did not receive adequate assistance of PCR counsel in his first application."); *see also Odom v. State*, 337 S.C. 256, 523 S.E.2d 753, 755 (1999) (one-year statute of limitations does not apply to *Austin v. State* appeals), and *Austin v. State*, 305 S.C. 453, 409 S.E.2d 395(1991) (outlining procedure for belated appeal in post-conviction cases by the filing of a successive application for post-conviction relief in Court of Common Pleas). Moreover, S.C. Code Ann. § 17-27-45(c) (Westlaw 2012) allows the filing of a PCR application within one year of the date of actual discovery of facts not previously presented and heard or one year after the date when the facts could have been ascertained by the exercise of reasonable diligence.

The state court could address Petitioner's claims on the merits if it finds "sufficient reason". Under the facts presented, it cannot be said that Petitioner's grounds are plainly meritless as successive.

C.  Intentionally Dilatory Tactics

Petitioner's first PCR petition was denied on August 29, 2011. Petitioner's counsel in this habeas corpus case were appointed on April 5, 2012, and these Grounds II through V were raised in the Petition filed on June 29, 2012, and in application for post-conviction relief filed in the Court of Common Pleas on the same day. Based on the record presented, it does not appear that Petitioner or counsel has engaged in any intentionally dilatory litigation tactics.

The court is mindful of the warnings in *Rhines* that stays should be available only in limited circumstances and if employed too frequently, have the potential to undermine the AEDPA purposes of finality and speedy resolution of federal claims. However, under the unique facts and circumstances of this case, a *Rhines* stay is appropriate. Furthermore, in addition to satisfying the factors set forth in *Rhines*, a more complete factual record to aid this court's review may be available after his second PCR is concluded in state court. *See Lundy*, 455 U.S. at 519 (noting under comity principles the important interest in a state court's complete factual record and citing 28 U.S.C. § 2244(d)(presumption of correctness of factual findings made by a state court)) *See also Id.* at 522 (total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief").

***Conclusion***

Accordingly, Petitioner's Motion to Stay (ECF No. 17) is granted. *Counsel for Petitioner and counsel for Respondents are encouraged to seek expedited proceedings before the Court of Common Pleas.*

Counsel for Petitioner shall file a supplemental brief and motion to lift the stay within thirty (30) days after the decision of the Court of Common Pleas in Case No. 2012-CP-32-2718 becomes final. *See Rhines*, 544 U.S. at 278.[17] Counsel for Respondent may file a response fourteen (14) days after the filing of Petitioner's supplemental brief.

The Clerk of Court shall indicate on the docket sheet of this case that the above-captioned case has been stayed.

IT IS SO ORDERED.

December 10, 2012
Florence, South Carolina

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

---

[17] Counsel for Respondents may seek to lift the stay if Petitioner engages in abusive or dilatory litigation tactics in state court. *Rhines*, 544 U.S. at 278.