IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Gary Dubose Terry, | ) | Civil Action No. 4:12-1798-RMG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Bryan P. Stirling, *Commissioner, South,* | ) | |
| *Carolina Department of Corrections, and* | ) | |
| Willie D. Davis, *Warden, Kirkland* | ) | |
| *Reception and Evaluation Center,* | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the Court on the Report and Recommendation ("R & R") of the

Magistrate Judge (Dkt. No. 142), recommending that the Court deny Respondent's motion to strike

(Dkt. No. 131) and grant Respondents' motion for summary judgment (Dkt. No. 130) on

Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 16). For

the reasons set forth below, the Court adopts the R & R as the Order of the Court, denies

Respondent's motion to strike and grants Respondents' motion for summary judgment.

I.      **Background**

The Court adopts the relevant facts and procedural history as outlined in the R & R. (Dkt.

No. 142 at 2–17.)   The Lexington County Grand Jury indicted Petitioner Gary Dubose Terry in

July 1995 for the murder of Urai Jackson and for first degree burglary, first degree criminal sexual

conduct, and malicious injury to a telephone system.   The State then served notice of intent to seek

the death penalty.   On September 18, 1997, Petitioner was found guilty on all counts, and on

September 21, 1997, the jury found the existence of two statutory aggravating factors, namely, that

the murder was committed during a crime of sexual conduct and that the murder was committed

during a crime of burglary.   The jury recommended that Terry be sentenced to death and the trial

judge thereafter sentenced Petitioner to death.

On March 13, 2000, the South Carolina Supreme Court affirmed Petitioner's convictions and sentence. *State v. Terry*, 529 S.E.2d 274, 275 (S.C. 2000). The South Carolina Supreme Court denied Petitioner's petition for rehearing on April 19, 2000 (Dkt. No. 39-2 at 52–58), and the United States Supreme Court denied his petition for writ of certiorari on October 2, 2000, *Terry v. South Carolina*, 531 U.S. 882, 121 S.Ct. 197 (2000).

On November 30, 2000, through counsel, Petitioner filed his first application for post-conviction relief ("PCR"). Petitioner presented twenty-three grounds in his PCR application. (Dkt. No. 39-2 at 205 – 206.) The PCR court held an evidentiary hearing from July 10 – 12, 2006, and heard testimony from Petitioner's trial counsel (Elizabeth Fullwood and Isaac McDuffie Stone, III), the defense team's investigator, appellate counsel, South Carolina Law Enforcement Division ("SLED") personnel, three of Petitioner's friends and relatives, and a Lexington County Sheriff's Department detective. On February 18, 2009, the PCR court denied Petitioner's PCR application and dismissed it with prejudice. Petitioner filed a motion to alter or amend the PCR court's judgment, which the PCR court denied. Petitioner then filed a petition for writ of certiorari with the South Carolina Supreme Court, which the court granted on November 5, 2010. On August 29, 2011, after briefing and oral argument, the South Carolina Supreme Court affirmed the PCR court's decision. *Terry v. State*, 714 S.E.2d 326 (S.C. 2011); (Dkt. No. 42-4.) Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on February 21, 2012. *Terry v. South Carolina*, 565 U.S. 1206, 132 S.Ct. 1548 (2012); (Dkt. No. 42-7.)

Petitioner timely filed the present habeas petition on June 29, 2012. (Dkt. No. 16.) On the same day, Petitioner also filed a second application for post-conviction relief in the state courts. (Dkt. Nos. 17; 117.) Based on the second PCR application, Petitioner filed a motion to stay this

matter pending resolution of his contemporaneously-filed second PCR application. (Dkt. No. 17.) On December 10, 2012, the Court granted Petitioner's motion. (Dkt. No. 53.) Petitioner's second PCR application was dismissed as successive on June 19, 2018. (Dkt. No. 117-1.) On July 13, 2018 the Court lifted the stay and allowed time for amended briefing. (Dkt. No. 119.)

Petitioner's habeas petition raises five grounds for relief: 1) Petitioner's trial counsel were ineffective for failing to object on the basis of prosecutorial misconduct to the trial court's exclusion of statements Petitioner made and for failing to concede guilt after informing the jury Petitioner had confessed; 2) Petitioner's trial counsel were ineffective for failing to disclose an actual conflict of interest; 3) Petitioner's trial counsel were ineffective for failing to conduct adequate and appropriate *voir dire*; 4) Petitioner's trial counsel were ineffective for failing to develop evidence supporting a defense of guilty but mentally ill or to adequately investigate and present mitigating evidence of Petitioner's abusive childhood, and; 5) Petitioner's trial counsel were ineffective in failing to object to or impeach aggravating testimony from Petitioner's ex-wife that he had raped her during their marriage. (Dkt. No. 16.)

Respondents moved for summary judgment on all grounds and moved to strike certain exhibits Petitioner submitted in support of his petition. (Dkt. Nos. 130, 131.) Petitioner opposed the motions. (Dkt. No. 137.) The Magistrate Judge issued an R & R recommending the Court grant Respondents' motion for summary judgment and deny Respondents' motion to strike. (Dkt. No. 142.) Petitioner filed objections to the R & R regarding Grounds One through Four and the denial of an evidentiary hearing, and Respondents filed a response. (Dkt. Nos. 149, 157.)

## II. Legal Standard

### A. Review of R & R

The Magistrate Judge makes only a recommendation to this Court that has no presumptive

weight. The responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court must make a *de novo* determination of those portions of the R & R Plaintiff specifically objects. Fed. R. Civ. P. 72(b)(2). Where Plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). "Moreover, in the absence of specific objections to the R & R, the Court need not give any explanation for adopting the recommendation." *Wilson v. S.C. Dept of Corr.*, No. 9:14-CV-4365-RMG, 2015 WL 1124701, at *1 (D.S.C. Mar. 12, 2015). *See also Camby v. Davis*, 718 F.2d 198, 200 (4th Cir.1983).

Petitioner objects to the R & R regarding Grounds One through Four and the recommendation to not hold an evidentiary hearing. (Dkt. No. 149.) Therefore, those portions of the R & R are reviewed *de novo*. All other portions of the R &R are reviewed for clear error.

### B. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the

movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## C. Habeas Corpus

### i. Standard for Relief

Claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) *quoting Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment). "A state court's determination that a claim lacks merit precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 1702 (2014) (stating that "'[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") *quoting Harrington*, 562 U.S. at 103.

Therefore, when reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000); *see also White*, 572 U.S. at 419 (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and providing that "even clear error will not suffice") (internal quotation marks and citation omitted). State court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### ii. *Procedural Default*

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011); *see also In re Exhaustion of State Remedies in Criminal & Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the

Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies"). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted).

Generally, a federal habeas court should not review the merits of claims procedurally defaulted (or barred) under independent and adequate state procedural rules. *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### D.    Ineffective Assistance of Counsel

When claiming habeas relief due to ineffective assistance of counsel at trial, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104. This is a high standard, one in which a habeas petitioner alleging prejudice must show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Petitioner must show that, "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *Harrington*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

The Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 *quoting Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Id.* In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s 'deferential standards.'" *Id.*

Courts are reluctant to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 562 U.S. at 109. This rule, however, is not absolute where the purported strategic decision is based upon an error or ignorance of the law by trial counsel. *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy"); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the Petitioner's options is "erected upon . . . a rotten foundation" and is not entitled to deference).

### III.    **Discussion**

#### A.  **Ground One**

In Ground One, Petitioner alleges that his trial counsel were ineffective for: (i) failing to object on the basis of prosecutorial misconduct to the trial court's exclusion of two statements Petitioner made and; (ii) for failing to concede guilt after informing the jury Petitioner had confessed during the opening statement. (Dkt. No. 16 at 7.)

Before trial, Petitioner's counsel moved to suppress a statement Petitioner made to police during the course of the criminal investigation. When police questioned Petitioner on March 24, 1995, the Petitioner gave a statement that he had consensual sex with Urai Jackson and, according to Petitioner, as he began to leave, an argument ensued, which led to Petitioner losing his temper and ultimately beating Ms. Jackson with some "object." (Dkt. No. 37-3 at 78–79.) Petitioner's trial counsel argued Petitioner made the statement involuntarily and had been ill when police interviewed him. The trial court conducted a *Jackson v. Denno*, 378 U.S. 368 (1964) hearing and found the statement admissible.

In his guilt-phase opening statement, assuming the State would introduce Petitioner's statement as evidence of guilt, Petitioner's trial counsel informed the jury that Petitioner had confessed to having sex and killing Ms. Jackson, and that Petitioner had confessed to another murder as well, but that his confession was unreliable. The State, however, never moved to admit Petitioner's March 24, 1995 statement in the guilt-phase. When the detective who had taken Petitioner's statement was called as a witness, the State moved to exclude the statement.

Petitioner's trial counsel argued Petitioner should be permitted to introduce the statement under South Carolina Rule of Evidence 804(B)(3) as a statement against interest because Petitioner, who exercised his right not to testify, was unavailable as a witness. The court ruled

Petitioner could not introduce the statement, finding that invoking his right not to testify did not allow Petitioner "to introduce a statement that the State does not put in in its case in chief in order to get around the issue of him not taking the stand."[1] (Dkt. No. 36-4 at 21 – 38.)

On direct appeal, the South Carolina Supreme Court considered whether the trial court erred "in refusing to permit [Petitioner] to introduce his own statement to police into evidence" and "concur[ed] with the trial court's ruling that [Petitioner] could not use his fifth amendment privilege against self-incrimination as both a sword and a shield." *Terry*, 529 S.E.2d at 276 – 77.

In his PCR application, Petitioner asserted trial counsel were ineffective for conceding guilt in the opening statement, focusing on the fact that the March 24, 1995 statement did not confess to murder, only manslaughter, and additionally did not confess to burglary or criminal sexual conduct. (Dkt. No 39-2 at 205 – 206.) At an evidentiary hearing, Petitioner's PCR counsel questioned his trial counsel and the prosecutors about the trial and any strategy underlying counsel's decisions. The PCR court denied Petitioner's claim. (Dkt. No. 40-4 at 28 – 45.)

### i. Petitioner's Statement and Prosecutorial Misconduct

On appeal from the PCR court's decision, the South Carolina Supreme Court considered the issue now before this Court: whether trial counsel were ineffective for failing to object to the exclusion of Petitioner's statement based on prosecutorial misconduct or for failing to adjust their strategy and concede guilt after telling the jury Petitioner had confessed. (Dkt. No. 42-4.) The South Carolina Supreme Court affirmed the dismissal of Petitioner's PCR claims. (*Id.*)

Importantly, regarding counsel's failure to assert prosecutorial misconduct as a ground for admitting Petitioner's statement, the South Carolina Supreme Court held that:

> Trial counsel testified he assumed the State would try to introduce the statement during the guilt phase because the State argued at the *Jackson v. Denno* hearing that

---

[1] The State later introduced both statements in the penalty phase. (*See* Dkt. No. 37-3 at 74–81.)

the statement was voluntarily given. He acknowledged, however, that no one from the prosecution team told him affirmatively that the State intended to introduce the statement during the guilt phase.

(*Id.* at 5.) Additionally, the court noted that, "[o]ne solicitor testified the State decided well before trial not to present petitioner's statement during the guilt phase because it was contrary to what the State sought to prove." (*Id.*) Therefore, the South Carolina Supreme Court concluded that "there is evidence to support the PCR judge's finding trial counsel were not ineffective.... The solicitor's decision not to present petitioner's statement during its case in chief did not constitute prosecutorial misconduct, but was a matter of trial strategy." (*Id.*)

Petitioner asserts the South Carolina Supreme Court's finding constitutes an unreasonable application of federal law, focusing on the court's application of *Old Chief v. U.S.*, 519 U.S. 172 (1997). Specifically, the South Carolina Supreme Court held that

> "[I]t is generally recognized that the prosecution and the defense should be afforded wide discretion in the selection and presentation of evidence." *State v. Johnson*, 338 S.C. 114, 525 S.E.2d 519 (2000).... It is "unquestionably true as a general matter" that "the prosecution is entitled to prove its case by evidence of its own choice . . . ." *Old Chief v. U.S.*, 519 U.S. 172 (1997).

(Dkt. No. 42-4 at 4 – 5.) Petitioner contends the court oversimplified the issue, misapplied the Supreme Court's reasoning, and ignored relevant cases holding that a prosecutor may not make an "affirmative misrepresentation" regarding the "scope and nature of its case-in-chief which misleads the defense. (Dkt. No. 137 at 5.) Petitioner's objections to Ground One simply re-asserts the same argument. (Dkt. No. 149 at 2.)

The Magistrate Judge carefully considered this argument in the R & R, examined each of the Supreme Court decisions Petitioner put forth as "relevant and controlling," and found those cases relevant, but not dispositive of whether the State's actions in this case constituted prosecutorial misconduct. (*See* Dkt. No. 142 at 43 – 47.) Therefore, the R & R concluded that

Petitioner failed to show the state court unreasonably applied federal law. The Court agrees.

As the Magistrate Judge correctly noted, the law holds prosecutors, as representatives of the state, to high ethical standards. *See, e.g.*, *Berger v. United States*, 295 U.S. 78, 88 (1935) ("The prosecutor is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all . . . "). Accordingly, prosecutors are bound by a "duty to refrain from improper methods calculated to produce a wrongful conviction." *Id.* *See Brady v. Maryland*, 373 U.S. 83 (1963) (prosecutor cannot withhold exculpatory evidence); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (prosecutor cannot fail to correct false evidence); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (prosecutor cannot present perjured testimony). However, Petitioner has presented no decision, nor is the Court aware of any case, requiring a prosecutor to correct defense counsel's undisclosed assumptions. Instead, cases cited by Petitioner indicate the concern is with affirmative misrepresentations or misleading actions. *See Lankford v. Idaho*, 500 U.S. 110 , 111 S. Ct. 1723 (1991) (finding Constitutional violation where state sought death penalty after providing notice that it was not seeking the death penalty).

To the contrary, here, the State never represented that it would introduce the statement in the guilt phase. (Dkt. Nos. 39-3 at 67 – 68, 100; 40-1 at 22.) Further, while Petitioner challenges the application of *Old Chief*, Petitioner does not challenge the state court's factual findings, which are supported by the record, that the State trial counsel made a tactical decision, well before trial, not to introduce Petitioner's statement in the guilt phase, unless Petitioner testified. (Dkt. Nos. 39-3 at 92 – 93, 97, 101; 40-1 at 103 – 104.) Therefore, there is support in the record that the prosecutors contested the March 24, 1995 statement's admissibility at the *Jackson v. Denno* to determine whether it could introduce the statement on cross-examination if Petitioner should take

the stand, which he did not, or later in the sentencing phase. (Dkt. No. 39-3 at 91 – 92.) Therefore, there is no dispute of material fact that the state court decision finding no prosecutorial misconduct was not contrary to, or an unreasonable application of, federal law and was not an unreasonable determination of the facts.

### ii. Failure to Concede Guilt

Regarding trial counsel's failure to concede guilt, the South Carolina Supreme Court held:

Assuming trial counsel were deficient in not changing their trial strategy to gain credibility with the jury, petitioner has failed to meet his burden of showing he was prejudiced. Considering the evidence the State presented during the guilt phase of trial, petitioner cannot show the outcome of the penalty phase would have been different had trial counsel conceded petitioner's guilt in the guilt phase.

(Dkt. No. 42-4 at 6.) Petitioner asserts the state court unreasonably applied *Strickland* in finding that there was no prejudice from trial counsel's decision not to concede guilt after Terry's confession statement was excluded by the trial court. (Dkt. No. 137 at 14.) Petitioner further argues that South Carolina Supreme Court's prejudice analysis was improper under *Strickland* since it improperly weighed the strength of the State's evidence in determining whether the failure to concede guilt was prejudicial. (*Id.*)

However, as accurately noted by the Magistrate Judge, the South Carolina Supreme Court relied on a prejudice standard nearly identical to the standard articulated in *Strickland*. Further, the South Carolina Supreme Court did not apply a presumption, as Petitioner implies, and instead a reasonable reading of the court's decision indicates that the court evaluated the State's guilt-phase evidence and determined there was no "reasonable probability" that the failure to concede guilt changed the outcome. *Strickland*, 466 U.S. at 694. The Court therefore cannot find an unreasonable application of law or fact. *See Tice v. Johnson*, 647 F.3d 87, 108 (4th Cir. 2011) ("Mindful of the deference owed under AEDPA, we will not discern an unreasonable application

-13-

of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'").[2] For these reasons and the reasons stated in the R & R, the Court agrees with the Magistrate Judge's assessment that the state court did not unreasonably apply *Strickland* or unreasonably interpret the facts in finding that, in this case, counsel's decision not to concede guilt in the guilt phase did not prejudice Petitioner in the sentencing phase. Therefore, the Court denies Ground One.

## B. Procedurally Defaulted Grounds

### i. Standard of Review

Petitioner did not raise the remaining grounds in his initial PCR action.[3] These claims are, therefore, procedurally defaulted. However, Petitioner argues that the default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Court held that ineffective assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial" where:

(1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) *quoting Martinez*, 566 U.S. at 14, 17–18.

---

[2] Petitioner's reliance on *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551 (2004) is misplaced. To begin, the case makes clear that conceding guilt, on its own, does not assure a life sentence. Additionally, to the extent Petitioner relies on *Nixon* to argue that Petitioner's trial counsel lost credibility by promising to admit the confession and then failing to do so, necessitating a concession of guilt, the statements were ultimately admitted in the sentencing phase. (Dkt. No. 37-3 at 74–81.) Therefore the jury was aware at the time of sentencing that Petitioner's trial counsel did not, in fact, mislead the jury regarding the confession.

[3] He presented them to the highest state court in his second PCR application, which was denied as successive.

Thus, for each of the remaining grounds, Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that . . . the claim has some merit," and that his PCR counsel were ineffective for not raising that claim. *Martinez*, 566 U.S. at 14.

## ii. Motion to Strike and Request for an Evidentiary Hearing

Petitioner provided additional exhibits outside of the record with his habeas petition and requested an evidentiary hearing in support of his procedurally defaulted grounds. (Dkt. Nos. 16; 137.) Respondents moved to strike all but two of those exhibits, asserting they go to the merits of his underlying claims, not solely whether he can show cause and prejudice to excuse their procedural default, and Petitioner does not satisfy the exceptions allowing a court to consider evidence outside of the record. (Dkt. No. 131 at 2–9). *See* 28 U.S.C. § 2254(e)(2). Respondents also oppose Petitioner's request for an evidentiary hearing. (Dkt. No. 129 at 76.)

Regarding the motion to strike, the AEDPA generally prohibits federal habeas courts from considering extra-record evidence when applicants have failed to develop the factual bases for their claims in state courts. *See Schriro v. Landrigan*, 550 U.S. 465, 473 n.1 (2007) *citing* 28 U.S.C. § 2254(e)(2). However, expanding the record is appropriate in some instances, such as to assess whether cause and prejudice excuse a petitioner's procedural default of a claim. *Fielder v. Stevenson*, No. 2:12-cv-412-JMC, 2013 WL 593657, at *3 (D.S.C. Feb. 14, 2013). The Magistrate Judge recommended denying the motion to strike and considering Petitioner's exhibits for the purpose of assessing cause and prejudice. No Party has objected to this holding, and the Court finds it proper to consider the evidence to assess cause and prejudice, and therefore denies the motion to strike.

Regarding the evidentiary hearing, after considering Petitioner's extra-record exhibits, the

Magistrate Judge found that the Petitioner failed to allege any substantial underlying claims of ineffective assistance of trial counsel and, thus, recommended denying his request for an evidentiary hearing on the defaulted grounds . (Dkt. No. 142 at 143–44.) Petitioner specifically objects and asserts he is entitled to an evidentiary hearing in general, and specifically in relation to Grounds Two and Four. (Dkt. No. 149 at 3 – 6.)

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. Thus, to grant an evidentiary hearing, "there 'must be a viable constitutional claim, not a meritless one, and not simply a search for evidence that is supplemental to evidence already presented.'" *Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016) (citations omitted). Therefore, "[w]here documentary evidence provides a sufficient basis to decide a petition, the court is within its discretion to deny a full hearing." *Runningeagle v. Ryan*, 825 F.3d 970, 990 (9th Cir. 2016). *See also Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Segundo*, 831 F.3d at 351 ("*Martinez* and *Trevino* protect . . . habeas petitioners from completely forfeiting an [ineffective assistance of counsel] claim; neither entitles petitioners to an evidentiary hearing in federal court in order to develop such a claim."). As explained below, the Court agrees with the Magistrate Judge and finds Petitioner has not made specific factual allegations that, if true, would entitle him to habeas relief and has failed to demonstrate the substantiality of his underlying ineffective assistance of counsel claims. Therefore, the Court finds that the Magistrate Judge properly denied Petitioner's request for an evidentiary hearing.

As the Court has denied the motion to strike, the Court assess Grounds Two, Three, Four

and Five below with the benefit of Petitioner's submitted evidence to assess whether the procedural default should be excused.

### C. Ground Two

In Ground Two, Petitioner asserts he was denied the effective assistance of counsel because one of his trial attorneys, Stone, was operating under an actual conflict of interest. While representing Petitioner, Stone also served as a part-time prosecutor in another judicial circuit and as a counsel for the Insurance Reserve Fund ("IRF"), an entity that insures state agencies and local governments. The Magistrate Judge found Petitioner failed to adequately show that Stone labored under an actual conflict of interest or that Petitioner's PCR counsel were ineffective for not raising this claim. (Dkt. No. 142 at 62–69.) The Court agrees with the Magistrate Judge's analysis.

"A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest." *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001), *aff'd*, 535 U.S. 162 (2002). "To establish ineffective assistance of counsel based on a conflict of interest that was not raised before the trial court, the [petitioner] must demonstrate that (1) counsel operated under 'an actual conflict of interest' and (2) this conflict 'adversely affected his lawyer's performance.'" *Woodfolk v. Maynard*, 857 F.3d 531, 553 (4th Cir. 2017) *quoting Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "After a petitioner satisfies this two-part test, prejudice is presumed." *Mickens*, 240 F.3d at 355.

"A [petitioner] has established an adverse effect if he proves that his attorney took action on behalf of one client that was necessarily adverse to the defense of another or failed to take action on behalf of one because it would adversely affect another." *Id.* at 360. To make this showing:

> [f]irst, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision . . . . [T]he

petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Id.* at 361 (citations omitted).

Petitioner alleges Stone's simultaneous representation of the IRF created two conflicts: first, that the interests of South Carolina were adverse as the State was seeking the death penalty against Petitioner, and; second, that Stone received a substantial part of his income from the IRF, and therefore had a personal stake in continuing to receive appointments. (Dkt. No. 137 at 31.) Further, Petitioner focuses on Stone's roles as a part-time solicitor in another circuit in South Carolina and previously as a special prosecutor in a single case in the same judicial circuit, which Petitioner asserts was an additional conflict of interest. (*Id.* at 34 – 35.)

Regardless of whether Stone's representation of the IRF or simultaneous work as a prosecutor in another judicial circuit,[4] Petitioner has failed to create any dispute of fact that there was an adverse effect from any alleged conflict. As the Magistrate Judge correctly noted, while the Petitioner made general conclusory allegations, the Petitioner has not identified any specific deficiency in his briefing, objections, or exhibits regarding Stone's performance that relates to Stone's alleged conflict. To the extent Petitioner is attempting to rely the other grounds for which he alleges he received ineffective assistance of trial counsel, Petitioner has not alleged a link between those deficiencies and Stone's alleged conflict. Thus, Petitioner fails to adequately allege that Stone labored under an actual conflict of interest that adversely effected Stone's performance. Accordingly, Petitioner has not alleged a substantial underlying ineffective assistance of counsel

---

[4] The Fourth Circuit has declined to find a *per se* conflict on similar facts. *See Beaver v. Thompson*, 93 F.3d 1186, 1193 (4th Cir. 1996) (declining to find *per se* conflict of interest where defense counsel was part-time prosecutor in neighboring county). There is also no evidence that Stone remained a special prosecutor in the Eleventh Judicial Circuit, where Lexington County is located, at the time of Petitioner's trial.

claim for this defaulted ground, and therefore ground two must be denied.

Regardless of failing to raise a substantial claim, necessary to overcome a procedural default, Petitioner nonetheless argues that PCR counsel should have investigated Stone's potential conflict. In his objections, Petitioner maintains that PCR counsel had an affirmative obligation to investigate Stone's conflicts of interest, that Petitioner has shown through affidavits that PCR counsel did not have a strategic reason for not investigating this claim and an "[a]n evidentiary hearing is now necessary" to determine cause and whether Petitioner was prejudiced by Stone's alleged conflicts. (Dkt. No. 149 at 3.)

However, as explained above, even had PCR counsel investigated the alleged conflict, there would be no cause to set aside the default as the underlying claim is not substantial. Further, Petitioner points to the fact that PCR counsel "was aware that [Stone] had some connection with the Insurance Reserve Fund," and had spoken to another attorney who raised the same issue in another capital PCR proceeding, *Aleksey v. South Carolina*, though there is no indication PCR counsel was aware of Stone's work as a part-time prosecutor. (Dkt. Nos. 16-3 at 11, 13; 16-4 at 33.)[5] However, while Petitioner argues that this failure to more fully investigate and present the claim prejudiced Petitioner, "because if they had raised the issue, it would have been resolved in [Petitioner's] favor," record evidence demonstrates the contrary. (Dkt. No. 137 at 36.)

Notably, in *Aleksey v. South Carolina*, PCR counsel dedicated a substantial portion of their case to similar issues surrounding Stone's conflicts of interest stemming from his work for the IRF and as a prosecutor while representing Aleksey at trial. *See Aleksey v. Stirling*, 5:14-3016-JMC-

---

[5] PCR counsel, however, was not aware that Stone was employed as a part-time solicitor in another judicial circuit. Regardless, as explained above, the underlying conflict of interest claim is not substantial.

KDW, Dkt. Nos. 43-4 at 192 – 200; 43-5 at 1 – 3; 44-1 at 27 – 53[6] (hereinafter *"Aleksey* Dkt."). Despite the fact that Aleksey's PCR counsel raised and explored these issues in depth, the PCR court dismissed those grounds (*Id.*), and the South Carolina Supreme Court denied Aleksey's appeal. (*Aleksey* Dkt. No. 41-10.) The Court offers no opinion on the PCR court's decision or analysis in *Aleksey*, but notes only that the Court cannot assume in Petitioner's case the state courts would have reached a different conclusion. Accordingly, even if PCR counsel was deficient for not further investigating this claim, Petitioner has failed to demonstrate how that alleged deficiency in failing to investigate Stone's alleged conflict of interest creates a "reasonable probability" of a different outcome.

Therefore, as discussed above, Petitioner has not presented facts creating a dispute that Stone was ineffective, and the Court finds his claim not to be substantial under *Martinez*, and, further, Petitioner failed to show that PCR counsel's failure to investigate was prejudicial. In addition, the Court rejects Petitioner's request for an evidentiary hearing as his underlying claim lacks merit. Therefore, Ground Two is denied.

### D. Ground Three

In Ground Three, Petitioner alleges that trial counsel was ineffective in failing to conduct an adequate and appropriate *voir dire* to identify to at least two jurors who allegedly believed the death penalty should be applied automatically upon conviction of murder. (Dkt. No. 16 at 22.) Petitioner focuses on the trial court's refusal to permit Petitioner's trial counsel from asking potential jurors about "exposure to…psychiatrists." (Dkt. No. 31-1 at 44 – 45.) Specifically, in attempting to make a record, Fullwood indicated that trial counsel had planned to ask potential

---

[6] The Court may take judicial notice of its own records. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice is in noticing the content of court records.").

jurors "their prior exposure to the field of psychiatry…their general attitudes about the field of psychiatry[, and] their knowledge of and opinion of the field of D.N.A. testing, genetic biology." (*Id.* at 53 – 54.) The trial court prohibited all of this testimony, instead holding that counsel was not allowed to probe "exactly what this juror's particular thrust is on a very minor issue." (*Id.* at 52 – 53.) Instead, the trial court, at the request of Petitioner's trial counsel, read the statutory mitigating circumstances to each juror and asked if the juror could consider the evidence. (Dkt. No. 34-1 at 55.)

Petitioner focuses on two jurors, Juror #35 and Juror #214, who Petitioner alleges both believed the death penalty should be automatically applied upon a conviction of murder, and further that Petitioner was prohibited from asking relevant questions to identify their beliefs. Juror #35, responding to the trial court, answered that the juror could return a sentence of life in prison or a sentence of death "depending upon the particular facts and circumstances[.]" (Dkt. No. 34-2 at 21 – 22.) Further, after counsel posed the hypothetical based on "finding somebody guilty of murder and another – like a rape or a burglary," Juror #35 again confirmed to trial counsel that the juror could consider a sentence of either life in prison or the death penalty. (*Id.* at 26.)

Turning to Juror #214, the juror similarly answered that the juror could return a sentence of life in prison or a sentence of death "depending upon the particular facts and circumstances." (Dkt. No. 34-3 at 24 – 25.) Similarly, in responding to questioning from counsel, counsel asked the juror whether, after the juror "already decided somebody is guilty of murder and guilty of rape or burglary or both," the juror could consider either a life sentence or a death sentence. (*Id.* at 29 – 31.) Juror #214 similarly confirmed the juror could consider either option. (*Id.*)

The Court therefore agrees with the reasoning of the Magistrate Judge and can find no evidence that the trial court erred in applying the law or that trial counsel was ineffective in

performing an adequate *voir dire* or preserving the issue for appeal. Petitioner focuses extensively

on *Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 2222 (1992), which holds that:

> A defendant on trial for his life must be permitted on voir dire to ascertain whether
> his prospective jurors function under such misconception. The risk that such jurors
> may have been empaneled in this case and "infected petitioner's capital sentencing
> [is] unacceptable in light of the ease with which that risk could have been
> minimized."… Petitioner was entitled, upon his request, to inquiry discerning those
> jurors who, even prior to the State's case in chief, had predetermined the terminating
> issue of his trial, that being whether to impose the death penalty.

*Id.* at 735 – 736 (citations omitted). However, here, Petitioner was permitted to do exactly what

*Morgan* requires, namely, he inquired whether each of these jurors had predetermined whether or

not to impose the death penalty, with each one confirming, with the benefit of knowing both the

statutory mitigating factors and that they would have already found Petitioner guilty of murder

plus an additional criminal act, that they could impose either a sentence of life in prison or death.

Therefore, the Court cannot find that the trial court improperly curtailed Petitioner's right for an

adequate *voir dire*. *See United States v. Tipton*, 90 F.3d 861, 878 (4th Cir. 1996) (" a *voir dire*

[must allow]…an inquiry sufficient to ensure—within the limits of reason and practicality—a jury

none of whose members would 'unwaveringly impose death after a finding of guilt' and hence

would uniformly reject any and all evidence of mitigating factors, no matter how instructed on the

law.") (citations omitted). Petitioner has failed to present any Supreme Court, or Fourth Circuit,

case law to this court indicating that he was entitled to ask the questions trial counsel sought to

ask. Indeed, as noted by the Magistrate Judge and the trial court, such questions are impermissible

under South Carolina law. Without some binding precedent, and in light of the Supreme Court

precedent indicating the contrary, the Court cannot find that there was any unreasonable or

contrary holding of law or unreasonable finding of fact. Therefore, Petitioner's claim regarding

an inadequate *voir dire* has no merit and is not substantial and the procedural default is not

excused.[7]

Further, as the Magistrate Judge correctly held, even if trial counsel was deficient, there is no indication of prejudice from the failure to conduct a more robust *voir dire*. To the contrary, the *voir dire* confirmed that the jurors would not automatically vote for the death sentence if they found Terry guilty of murder, including if they found him guilty of murder in addition to one of the other charges. It is unclear how any additional *voir dire* may have changed the outcome of the jury's decision or the jury makeup, and trial counsel, in maintaining the record, did not identify any questions which would have addressed the issue raised here. Therefore, Petitioner further does not show ineffective assistance of PCR counsel in failing to raise this claim as there is no indication that it was unreasonable to raise this claim or that the failure to raise the claim caused prejudice, as there is no indication it has merit.

As the claim is not substantial, and indeed the trial court's decisions were reasonable under federal law, and there is no showing of prejudice, the procedural default is not excused. Therefore, Ground Three is denied.

### E. Ground Four

Petitioner asserts his trial counsels' mitigation investigation was deficient in failing to investigate, discover and present to the jury evidence of abuse as a child and that counsel failed to investigate, develop and present evidence that would support a finding that Petitioner was guilty but mentally ill ("GBMI"). (Dkt. No. 16 at 26.)

*i. Physical Abuse*

---

[7] Petitioner also alleges trial counsel were inadequate in failing to create a sufficient record for appeal. To the contrary, Fullwood proffered the questions she would have asked potential jurors. (Dkt. No. 34-1 at 53 – 54.) There is therefore no merit to this contention and the claim is not substantial.

The Magistrate Judge examined the defense's sentencing phase case and found trial counsel were not deficient because trial counsel presented some evidence of Petitioner's childhood abuse, Petitioner has not presented any evidence that trial counsel knew more information about the abuse than was presented and cannot be faulted for their experts' failure to convey that information, and the record suggests counsels' expert did not find the abuse significant at the time. (Dkt. No. 142 at 104–06.) Petitioner does not specifically object to any of these findings but focuses instead on his GBMI claim and the Magistrate Judge's assessment of this ground without holding an evidentiary hearing. (*See* Dkt. No. 149 at 5.) Reviewing the record, the Court agrees with the R & R's determination.

Under *Strickland*,

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes that particular investigation unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690 – 91. Thus, counsel must conduct a reasonable investigation, thorough enough to make an informed decision regarding which mitigating evidence to present. In assessing counsel's investigation, the Court "must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2009) *quoting Strickland*, 466 U.S. at 688 – 689.

During the sentencing phase, the defense team's social work expert, Jan Vogelsang, testified that Petitioner experienced violence as a child and specifically testified to incidents of

abuse at home, such as where his brothers were arrested for beating up Petitioner, and that Petitioner's father broke Petitioner's collarbone with a board. (Dkt. No. 37-4 at 93.) Petitioner's mother, Patricia Terry, also testified that Petitioner and his brothers had physical altercations, that Petitioner "had a lot of run-ins with his dad" and also described the incident where Petitioner's father broke Petitioner's collarbone. (Dkt. Nos. 37-3 at 139; 37-4 at 1.)

Based on her extensive review of Petitioner's personal history, Vogelsang concluded that Petitioner's childhood environment was extremely neglectful and testified regarding potential impacts of that neglect. (Dkt. No. 37-4 at 78, 92–93.) As part of that discussion, Vogelsang discussed violence at home, but ended by stating, "Now, I'm not saying all of this to imply that family violence was the same in this family as it is in a lot of families because that's not what I found here. There is some violence. I would not say it's the kind of pervasive violence you find in a lot of homes where battering takes place." (Dkt. No. 37-4 at 93.)

Petitioner contends Vogelsang and the defense team's mitigation investigator, Vivian Massey, uncovered other evidence of abuse and that trial counsel were deficient for not presenting that evidence to the jury. There is some evidence suggesting that Petitioner and his family informed Vogelsang and Massey that Petitioner's father beat Petitioner with a belt, beat Petitioner so hard he would bleed, saw his children as workhorses and would not allow them to play, would tie the children to a tree and have them beat each other. (Dkt. No. 16-3 at 33 – 48.)

However, Fullwood, who was in charge of this portion of the penalty phase presentation, states in her affidavit:

> I do not recall making any strategic decision to limit the mitigation testimony of Gary's family members or to avoid presentation of evidence that he had suffered significant abuse as a child. It was my intent to present all of the evidence of that nature that we could and all that I was aware of was presented.

(Dkt. No. 16-2 at 3.) Therefore, the evidence shows that counsel, through the defense team, did

discover relevant information about abuse and counsel intended to present all evidence regarding abuse to the jury. Thus, to the extent that any deficiency exists, it falls to Vogelsang or Massey for not conveying the full extent of Petitioner's abuse to counsel, and not to counsel. It is not unreasonable or against prevailing professional norms for counsel to rely on a qualified mitigation investigator or other experts, *see Rhodes v. Hall*, 582 F.3d 1273, 1283 (11th Cir. 2009), and there is no right to effective assistance of expert witnesses or mitigation investigators, nor are their deficiencies automatically imputed to counsel, *see Wilson v. Greene*, 155 F.3d 396, 401 (4th Cir. 1998) ("The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness.").

Further, Vogelsang's own testimony reveals her position, at the time of trial, that the type of violence Petitioner experienced was not "the kind of pervasive violence you find in a lot of homes where battering takes place." (Dkt. No. 37-4 at 93.) Vogelsang expressly focused her testimony on neglect, rather than abuse. (Dkt. No. 37-4 at 92–93.) Trial counsel had every right to rely on their expert's informed assessment. *See Wilson*, 155 F.3d at 403 (finding attorneys are not required to second-guess the contents of expert reports).

Vogelsang now offers a different opinion, finding Petitioner's abuse significant and speculating as to why she would not have included additional information in her testimony. (Dkt. No. 16-4 at 3.) However, Vogelsang admits she "could recall almost nothing about this case." (*Id.*) Her speculation is not enough to overcome contradictory record evidence and create a genuine issue of fact and does not rebut the strong presumption that counsel performed reasonably.

Petitioner also asserts counsel and the defense team failed to discover additional details of Petitioner's father's abuse. He supports this claim with affidavits from Petitioner's mother, sister, uncle, and former sister-in-law. (Dkt. No. 16-4 at 5 – 23.) However, Vogelsang testified at trial

that she interviewed all but one of these witnesses. (Dkt. No. 37-4 at 74 – 75, Vogelsong stating she interviewed Petitioner's mother five times, Petitioner's sister, and Petitioner's uncle). In addition, Vogelsang interviewed other family members who would have personal knowledge of Petitioner's father's abuse, including Petitioner's other sister and two brothers. (*Id.*) Further, Vogelsang met with Petitioner four times. (*Id.* at 74.) Trial counsel testified they also met with Petitioner on numerous occasions, as did the team's forensic psychiatrist, Dr. Donna Schwartz-Watts, Massey, and an investigator. (*See* Dkt. No. 39-3 at 20–21, 58; Dkt. No. 40-1 at 10–11.)

It would be "unreasonable to discount to irrelevance the evidence of [Petitioner's] abusive childhood." *Porter v. McCollum*, 558 U.S. 30, 43 (2009). However, the record suggests counsel conducted a thorough investigation of this issue and they cannot be held accountable for information Petitioner and his family failed to provide or their experts failed to convey. *See Wilson*, 155 F.3d at 403; *DeCastro v. Branker*, 642 F.3d 442, 456 (4th Cir. 2011) ("Regardless, the state court did not act unreasonably in refusing Petitioner's attempt to upend his conviction and sentence based on the information that he failed to timely provide to counsel.").

Considering the record and evidence before the Court, the Court finds Petitioner's allegation that trial counsel conducted an unreasonable investigation into his childhood abuse lacks merit and is therefore not a substantial claim. Therefore, Petitioner fails to meet his burden under *Martinez* and this claim is procedurally defaulted and subject to summary judgment.

### ii. Guilty But Mentally Ill

Petitioner further asserts trial counsel were ineffective for failing to share details of his abuse with the defense team's forensic psychiatrist, Dr. Schwartz-Watts, which could have been used to testify that Petitioner was GBMI. (Dkt. No. 137 at 47–48.) As the Magistrate Judge correctly held, nothing in the record, including Dr. Schwartz-Watts's affidavit, directly supports

this assertion.

In South Carolina,

[a] defendant is guilty but mentally ill if, at the time of the commission of the act constituting the offense, he had the capacity to distinguish right from wrong as defined in Section 17-24-10(A), but because of mental disease or defect he lacked sufficient capacity to conform his conduct to the requirements of the law.

S.C. Code Ann. § 17-24-20(A).

At trial, Dr. Schwartz-Watts opined that Petitioner suffered from an organic mental disorder, not otherwise specified. (Dkt. No. 37-5 at 57.) She explained that Petitioner's brain was damaged or dysfunctional in a way that impacted his thinking, feelings, and behavior. (*Id.*) Dr. Schwartz-Watts indicated his brain damage would cause Petitioner to be paranoid, suspicious, moody, aggressive, explosive, and very impulsive and to experience emotions out of context. (*Id.* at 57–58.) She testified that some of Petitioner's prior violent acts, Ms. Jackson's murder, and Petitioner's confession were all consistent with her diagnosis and showcased Petitioner's paranoia and memory loss. (*Id.* at 59–61.)

To form her opinion, Dr. Schwartz-Watts reviewed Petitioner's birth records, school records, prison records, hospital records, psychiatric records, and legal records. (*Id.* at 43–44.) She also interviewed Petitioner's mother and met with Petitioner on "numerous occasions." (*Id.* at 43, 45.) Dr. Schwartz-Watts ordered blood tests to test for medical conditions that could account for Petitioner's psychiatric condition, reviewed neuropsychological testing by another defense expert, and consulted with a neurologist and two forensic psychiatrists. (*Id.* at 44.) However, Dr. Schwartz-Watts states trial counsel did not provide her with the social history information gathered by Massey or Vogelsang and she was, thus, unaware of the extent of Petitioner's abuse. (Dkt. No. 16-4 at 25–26.)

In 2012, after receiving the new information, Dr. Schwartz-Watts reevaluated Petitioner

and found he "suffered effects from trauma," such as intrusive thoughts, conflict avoidance, unhealthy and overprotective relationships, and drug use. (*Id.* at 26.) She also noted the physical abuse could have contributed to Petitioner's brain dysfunction. (*Id.*) Dr. Schwartz-Watts concludes by stating that she was never asked about the possibility of pleading GMBI, but "[h]ad I been asked, I believe that this evidence certainly could have been presented during the trial." (*Id.*)

There are multiple independent reasons why this fails to raise a substantial claim of ineffective assistance of trial counsel. To begin, assuming the truth of Dr. Schwartz-Watts's affidavit, trial counsel made a decision to not admit guilt. This is consistent with trial counsel's PCR testimony. At the PCR evidentiary hearing, Stone indicated they never engaged in plea negotiations and the solicitor's office never offered a plea. (Dkt. No. 39-3 at 66.) Further, Stone testified that they decided not to concede guilt as "we felt like the best angle we might have, other than the organic brain damage, was that the jury would have some type of residual doubt." (*Id.* at 66–67.) Based on the evidence presented, there is no indication that a viable option existed to enter a plea of GMBI, or indeed that trial counsel did not make a reasoned tactical decision that they believed offered them the "best angel" to avoid a death penalty. *Harrington*, 562 U.S. at 106 ("Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach.") (quotations omitted). Most importantly, there is no evidence that any of the experts who examined Terry provided any relevant information to Petitioner's counsel which would have alerted the trial counsel that GBMI was a viable option. Again, as above, there is no claim for ineffective assistance of an expert witness.

Petitioner's only argument that counsel were ineffective for not providing with information about Petitioner's childhood abuse to Dr. Schwartz-Watts relates to Dr. Schwartz-Watts' inability

to then use that information to support a GBMI plea.[8]  (Dkt. Nos. 16 at 29 – 30; 137 at 47 – 48.) However, none of the effects of trauma Dr. Schwartz-Watts found during her 2012 reevaluation suggest Petitioner could not conform his conduct to the requirements of the law when he killed Ms. Jackson—the relevant GBMI issue.  Further, Petitioner would have had to be amenable to pleading guilty, which the record does not indicate was the case.  Thus, there is further no evidence in the record that providing Dr. Schwartz-Watts with the details of Petitioner's childhood abuse would have supported a GBMI defense.

Petitioner has not alleged information suggesting that he had a viable GBMI plea, that he would have been willing to plead guilty, that trial counsel knew that a GMBI plea was available or, assuming without deciding that it was available, that trial counsel were deficient for failing to pursue a GBMI plea as opposed to their other reasoned trial strategy.  Therefore, Petitioner has failed to demonstrate that he has a substantial claim for ineffective assistance of counsel on Ground Four.  Regardless, Petitioner objects, asserting that he should have an opportunity to present evidence at an evidentiary hearing to resolve those issues.  (Dkt. No. 149 at 5.)  The Court disagrees. Petitioner has failed to allege how trial counsel were deficient for not pursuing this strategy.  Therefore, the claim is not substantial and Ground Four should be denied.

---

[8] The Court notes that Petitioner overstates the contents of Dr. Schwartz-Watts's and Fullwood's affidavits.  Petitioner states that "had Dr. Watts been provided all of the available information AND been asked the question, she would have been prepared to testify that [Petitioner] meets the 'standard of guilty but mentally ill based on his significant brain dysfunction.'" (Dkt. No. 16 at 29–30) (emphasis in original). (*See also* Dkt. No. 137 at 47–48). However, in her affidavit, Dr. Schwartz-Watts states merely that she found effects of trauma during her reevaluation and that she could have presented that evidence during trial. (Dkt. No. 16-4 at 26.) Dr. Schwartz-Watts does not express an opinion as to whether Petitioner met the GMBI standard or that she could have testified that he meets the standard.  In addition, Petitioner states, "as Fullwood indicates, [trial counsel] never even considered a defense of guilty but mentally ill even though they possessed evidence supporting that diagnosis." (Dkt. No. 137 at 48.) However, Fullwood states only that she does "not recall discussing whether to pursue a defense of [GMBI]." (Dkt. No. 16-2 at 3.)

### iii. Prejudice

For the sake of completeness, the Court also agrees with the Magistrate Judge's finding that Petitioner has not shown any prejudice resulting from trial counsels' alleged deficiencies under Ground Four. To establish a Sixth Amendment violation, Petitioner "must show that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence." *Porter*, 558 U.S. at 41. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To assess that probability, the Court must consider "the totality of the available mitigation evidence—'both that adduced at trial, and the evidence adduced in the habeas proceeding'—and 'reweig[h] it against the evidence in aggravation.'" *Porter*, 558 U.S. at 41 *quoting Williams v. Taylor*, 529 U.S. 362, 397–98 (2000)).[9]

The Court fully adopts and incorporates the R & R's thorough summary of the aggravating and mitigating evidence presented throughout the sentencing phase of Petitioner's trial. (*See* Dkt. No. 142 at 91–96, 114–126.) The Court will not restate the mitigation and aggravation evidence presented in great detail by the Magistrate Judge. However, in brief, the State portrayed Petitioner as a violent individual with a propensity for violence against women, with evidence that Petitioner stabbed a prostitute, abused his first wife, and assaulted many other individuals throughout his life. Additionally, the State presented evidence of other criminal activity by Petitioner, and detailed evidence regarding Petitioner's burglary, rape and murder of Ms. Jackson. Petitioner's trial team, in contrast, focused on Petitioner's organic brain injury as a likely cause of his violent, impulsive

---

[9] Even if the jury had found Petitioner GBMI, the law required Petitioner to "be sentenced . . . as provided by law for a defendant found guilty." S.C. Code Ann. § 17-24-70. In South Carolina, that includes the possibility of a death sentence. *See State v. Wilson*, 413 S.E.2d 19, 22 (S.C. 1992). Thus, the same prejudice analysis for sentencing would apply whether the jury found Petitioner guilty or GBMI.

behavior. Additionally, witnesses, including family members and experts, described Petitioner's upbringing. Looking at all the evidence, both in the record and as detailed by the Magistrate Judge, the Court agrees with the R & R that there is no reasonable probability that the jury would have reached a different sentencing decision if presented with the omitted evidence of childhood abuse. *See Strickland*, 466 U.S. at 700 ("Given the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances and, hence, the sentence imposed.").

Accordingly, Petitioner has failed to adequately allege a substantial underlying ineffective assistance of trial counsel claim and thus cannot meet his burden under *Martinez* to excuse the procedural default. Ground Four of the petition is therefore denied.[10]

### F. Ground Five

In Ground Five, Petitioner asserts his trial counsel were ineffective for failing to object to his ex-wife, Tammy Griffin's, testimony that he raped her once during their marriage and failure to use certain information to impeach her credibility. (Dkt. No. 16 at 31.) The Magistrate Judge recommended granting summary judgment on this ground and neither Petitioner nor Respondents

---

[10] As above, regarding Petitioner's objection to the Court's consideration of this claim without an evidentiary hearing, the Court finds Petitioner has not alleged any facts that would warrant habeas relief if proven and, thus, has not shown an evidentiary hearing is needed. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). Here, given the lack of evidence showing that trial counsel's actions were unreasonable or ineffective, there is no indication an evidentiary hearing would entitle Petitioner to habeas relief. Therefore, the Court finds the Magistrate Judge properly considered Petitioner's claims in Ground Four without convening an evidentiary hearing.

object to that recommendation.

Petitioner argues trial counsel should have objected based on the State's failure to provide specific notice of the contents of Ms. Griffin's testimony. "Only such evidence in aggravation as the State has informed the defendant in writing before the trial is admissible." S.C. Code Ann. § 16-3-20(B). In its pre-trial Notice of Evidence in Aggravation, the State indicated it planned to "present evidence as to the Defendant's adult and juvenile character, . . . prior and subsequent adult and juvenile acts and crimes of violence and bodily harm, . . . and other similar characteristics of [Petitioner], as an adult and a juvenile, by the testimony of victims, witnesses, . . . and other relevant testimony." (Dkt. No. 16-4 at 37.)

Ms. Griffin's testimony falls within this description as a prior act of violence and bodily harm. Further, Petitioner's defense team interviewed Griffin and was aware Petitioner had physically abused her. (*See* Dkt. No. 16-4 at 40 – 44.) Thus, although Petitioner's trial counsel may not have known of this particular incident of abuse, counsel knew Griffin was a likely witness and knew the aggravating nature of her testimony. Petitioner has therefore not demonstrated that trial counsel acted unreasonably in not objecting, especially where there was general notice and Petitioner was able to question Griffin during the mitigation investigation.

Petitioner further argues trial counsel should have impeached Ms. Griffin's testimony using letters she wrote to Petitioner after the rape, after they divorced, expressing her feelings for Petitioner and a desire to reconcile. (Dkt. No. 16-5 at 2 – 8.) The Court cannot find trial counsel ineffective for failing to impeach Griffin with letters she wrote to Petitioner. Fullwood, during cross-examination, took a different tactic with Griffin, focusing on Petitioner's immaturity and mental issues. (Dkt. No. 37-3 at 36 – 41.) Indeed, as the Magistrate Judge aptly noted, attempting to impeach Griffin's testimony could have easily been more damaging, both by seeming to attack

the credibility of an alleged rape victim and by potentially focusing the jury more on the alleged rape and Petitioner's violent character. While Fullwood could have handled the testimony differently, there is no indication counsel's conduct was deficient.

Finally, contrary to Petitioner's assertion that Ms. Griffin's testimony "offered a picture of [Petitioner] that suggested he was a serial rapist," (Dkt. No. 137 at 53), this incident was only one part of the voluminous aggravating evidence, including numerous other acts of violence. Therefore, as described above, the Court cannot find this failure to object or impeach prejudicial

Petitioner has not provided the Court with any evidence to find counsel deficient for failing to object to or impeach Ms. Griffin's testimony. Nor has Petitioner shown any resulting prejudice. Accordingly, Petitioner fails to present a substantial underlying claim of ineffective assistance of trial counsel and cannot meet his burden under *Martinez*. Ground Five is therefore denied.

## IV.    Certificate of Appealability

The governing law provides:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253. A prisoner satisfies the standard by demonstrating that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Here, the legal standard for the issuance of a certificate of appealability has not been met because reasonable jurists would not find it debatable that the state court reasonably decided Ground One and that the remaining grounds for relief are procedurally barred and no exception applies. Therefore, a Certificate of Appealability is denied.

## V.    Conclusion

For the foregoing reasons, the Court **ADOPTS** the R & R (Dkt. No. 142) as the Order of

the Court, **GRANTS** Respondents' motion for summary judgment (Dkt. No. 130), and **DENIES**

Respondents' motion to strike (Dkt. No. 131). The Court **DENIES** Petitioner's petition for a writ

of habeas corpus brought under 28 U.S.C. § 2254 and **DENIES** a Certificate of Appealability.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 26, 2019
Charleston, South Carolina