IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gary Dubose Terry, | Civil Action No. 4:12-1798-RMG |
| Petitioner, | |
| v. | **ORDER AND OPINION** |
| Bryan P. Stirling, *Commissioner, South, Carolina Department of Corrections, and* Willie D. Davis, *Warden, Kirkland Reception and Evaluation Center*, | |
| Respondents. | |

This matter is before the Court on the Petitioner's Motion to Alter or Amend the Judgment (Dkt. No. 164). For the reasons set forth below, the motion is denied.

I. **Background**

In July 1995, the Lexington County Grand Jury indicted Petitioner Gary Dubose for the murder of Urai Jackson and for first degree burglary, first degree criminal sexual conduct, and malicious injury to a telephone system. On September 18, 1997, Petitioner was found guilty on all counts, and three days later the jury found the existence of two statutory aggravating factors and recommended that Terry be sentenced to death, and the trial judge thereafter sentenced Petitioner to death. After his state court direct appeal and post-conviction relief were denied, Petitioner timely filed the present habeas petition on June 29, 2012.[1] (Dkt. No. 16.)

---

[1] On the same day, Petitioner filed a second application for post-conviction relief in the state courts. (Dkt. Nos. 17; 117.) Based on the second PCR application, Petitioner filed a motion to stay this matter pending resolution of the second PCR application. (Dkt. No. 17.) On December 10, 2012, the Court granted Petitioner's motion. (Dkt. No. 53.) Petitioner's second PCR application was dismissed as successive on June 19, 2018. (Dkt. No. 117-1.) On July 13, 2018 the Court lifted the stay and allowed time for amended briefing in this matter. (Dkt. No. 119.)

Petitioner's habeas petition raised five grounds for relief.[2] On September 26, 2019, this Court adopted the R & R of the Magistrate Judge and granted Respondent's motion for summary judgment, denying Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 and denying Petitioner a certificate of appealability. (Dkt. No. 162.) Petitioner now moves to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), focusing solely on the first four grounds raised in his habeas petition. (Dkt. No. 164.) Respondent filed a response in opposition to Petitioner's motion.[3] (Dkt. No. 166.)

II. **Legal Standard**

Federal Rule of Civil Procedure 59 allows a party to move to alter or amend a judgment within twenty-eight days. Fed. R. Civ. P. 59(e). The Court may grant a motion for reconsideration only in limited circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). A Rule 59 motion tests whether the Court's initial Order was "factually supported and legally justified." *Hutchinson v. Staton*, 994 F.2d 1076, 1081-82 (4th Cir. 1993). Therefore, the Court

---

[2] 1) Petitioner's trial counsel were ineffective for failing to object on the basis of prosecutorial misconduct to the trial court's exclusion of statements Petitioner made and for failing to concede guilt after informing the jury Petitioner had confessed; 2) Petitioner's trial counsel were ineffective for failing to disclose an actual conflict of interest; 3) Petitioner's trial counsel were ineffective for failing to conduct adequate and appropriate *voir dire*; 4) Petitioner's trial counsel were ineffective for failing to develop evidence supporting a defense of guilty but mentally ill or to adequately investigate and present mitigating evidence of Petitioner's abusive childhood, and; 5) Petitioner's trial counsel were ineffective in failing to object to or impeach aggravating testimony from Petitioner's ex-wife that he had raped her during their marriage. (Dkt. No. 16.)

[3] At the outset, Respondent alleges that Petitioner may not file a Rule 59 motion for reconsideration of a judgment on a habeas petition as it is considered an impermissible successive habeas petition. (Dkt. No. 166 at 1 – 2.) As the Court finds no merit to Petitioner's motion to amend or alter, the Court assumes without deciding that this motion does not constitute an impermissible successive petition.

may decline to reconsider a prior holding that "applied the correct legal standards" and made "factual findings [ ] supported by substantial evidence." *Harwley v. Comm'r of Soc. Sec. Admin.*, 714 Fed. Appx. 311, 312 (Mem) (4th Cir. 2018). As a result, Rule 59(e) provides an "extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403.

### III. Discussion

#### A. Ground One

In Ground One, Petitioner argues that his trial counsel was ineffective for failing to concede guilt given as the "overwhelming evidence of guilty rendered [defense counsel's] whole approach to the case disingenuous." (Dkt. No. 164 at 1.) Petitioner has not identified any change of law or any new evidence, and instead seems to argue that the Court's ruling was incorrect, thus constituting clear error or a manifest injustice. To begin with, this is an argument that was already substantially raised and addressed by the Court on summary judgment, and it is well settled that "Rule 59 motions 'may not be used to make arguments that could have been made before the judgment was entered[]'…[n]or are they opportunities to rehash issues already ruled upon because a litigant is displeased with the result. *Graham v. Sears, Roebuck & Co.*, No. CIVA 4:07CV00632RBH, 2010 WL 1727871, at *1 (D.S.C. Apr. 27, 2010) (citations omitted). Therefore, for this reason alone, the motion to alter or amend as to ground one is denied.

Further, as the Court previously held, this Ground asks the Court to review the state courts' decision in Petitioner's post-conviction relief proceedings, and a reasonable reading of the state court's decision indicates that the court evaluated the State's guilt-phase evidence and determined there was no "reasonable probability" that the failure to concede guilt changed the outcome. *Strickland*, 466 U.S. at 694. The Court therefore cannot find an unreasonable application of law or fact and cannot grant habeas relief under Ground One. *See Tice v. Johnson*, 647 F.3d 87, 108

(4th Cir. 2011) ("Mindful of the deference owed under AEDPA, we will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'"). The motion to alter or amend the order on ground one is therefore denied.

### B. Ground Two

In Ground Two, as above, Petitioner does not identify any change of law or new evidence, and instead solely reargues issues already addressed by the Court. (Dkt. No. 164 at 3.) Namely, Petitioner alleges that one of his trial attorneys, Duffy Stone, was operating under an actual conflict of interest as Stone also served as a part-time prosecutor in another judicial circuit and as a counsel for the Insurance Reserve Fund ("IRF"). (*Id.* at 3 – 4.) Petitioner largely restates his argument from his opposition to summary judgment, and does not address any relevant facts here, instead restating the legal standard already applied by the Court. (*Id.* at 3 – 7.) Regardless, as the Court previously held, Petitioner has failed to create any dispute of fact that there was an adverse effect from any alleged conflict, as required to make out a claim for ineffective assistance of counsel based on a conflict of interest. Therefore, Petitioner's motion to alter or amend the order on ground two is denied.

### C. Ground Three

In Ground Three, as above, Petitioner does not identify any change of law or new evidence, and instead focuses on the *voir dire* of a juror later interviewed by Kathy LaMotte, an attorney. (Dkt. No. 164 at 8.) Specifically, Petitioner identifies LaMotte's affidavit, which states that the juror, Juror # 109, stated that:

> During deliberations, they never discussing giving Gary Terry a life sentence. She would not have considered a life sentence in a case like this one. She could have given a life sentence on a murder that was committed in the heat of passion, but if the murder is planned, then the person had time to think about it, and the death

> penalty is the appropriate punishment. No mitigation evidence would convince her
> to give a life sentence when the murder is planned in advance.

(Dkt. No. 16-5 at 10; 162 at 8.) Yet, as with the jurors discussed at length in the Court's Order,[4] Juror #35 and Juror #214, Juror #109, responding to the trial court, confirmed that the juror could return a sentence of life in prison or a sentence of death "depending upon the particular facts and circumstances of that case[.]" (Dkt. No. 35-4 at 83 – 84.) Further, defense counsel asked whether, having decided that "somebody's a murderer and that they are a rapist or a burglar," and reiterating that the murder would not be "self-defense," "accidental murder" or a "heat of passion type thing," Juror #109 again confirmed that the juror could consider a sentence of either life in prison or the death penalty. (*Id.* at 89 – 91.) As before, the Court agrees with the reasoning of the Magistrate Judge and can find no evidence that the trial court erred in applying the law or that trial counsel was ineffective in performing an adequate *voir dire* or preserving the issue for appeal. LaMotte's later affidavit regarding Juror #109 contradicts Juror #109's direct answers during *voir dire* and does not demonstrate that trial counsel was ineffective in performing an adequate *voir dire*.

Further, Petitioner reiterates his arguments under *Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 2222 (1992). However, as the Court already held, Petitioner was permitted to do exactly what *Morgan* requires, namely, he inquired whether each of these jurors had predetermined whether or not to impose the death penalty, with each one confirming, with the benefit of knowing both the statutory mitigating factors and that they would have already found Petitioner guilty of murder plus an additional criminal act, that they could impose either a sentence of life in prison or death. Finally, as the Court held, even if trial counsel was deficient, there is no indication of prejudice from the failure to conduct a more robust *voir dire*. Therefore, the motion to amend or alter the

---

[4] The Court adopted the Magistrate Judge's R & R, which included a discussion holding that Juror #109 was also subject to a proper *voir dire*. (Dkt. No. 142 at 87 n. 25.)

judgment on ground three is denied.

**D. Ground Four**

In Ground Four, as above, Petitioner does not identify any change of law or new evidence, and instead realleges that trial counsel was deficient in failing to investigate, discover or present mitigation evidence. (Dkt. No. 164 at 9.) Petitioner alleges that the Court failed to consider Jan Vogelsang's affidavit, which argues that she could recall "almost noting about the case," from which she infers that "[t]he only reason I believe it to be difficult to recall details of this case is that this must have not been an active and cohesive team." (Dkt. No. 16-4 at 2.) However, Vogelsang's affidavit presents no evidence and, instead, is based on an inference from an admitted lack of recollection. To the contrary, as the Court held, the record evidence demonstrated that Petitioner's trial counsel put up multiple mitigation witnesses, including Petitioner's mother and Vogelsang.

As noted by the Court in its Order, there is some evidence suggesting that Petitioner and his family informed Vogelsang and Massey that Petitioner's father beat Petitioner with a belt, beat Petitioner so hard he would bleed, saw his children as workhorses and would not allow them to play, would tie the children to a tree and have them beat each other. (Dkt. No. 16-3 at 33 – 48.) However, even in light of this evidence discovered by Vogelsang, Vogelsang's own testimony reveals her position, at the time of trial, was that the type of violence Petitioner experienced was not "the kind of pervasive violence you find in a lot of homes where battering takes place." (Dkt. No. 37-4 at 93.) Instead, Vogelsang expressly focused her testimony on neglect, rather than abuse. (Dkt. No. 37-4 at 92–93.) Vogelsang's current, contrary, opinion does not create any dispute of fact regarding trial counsel's adequacy, especially given her admitted inability to recollect anything about the case. Therefore, the motion to amend or alter ground four is denied.

### E. Certificate of Appealability

Finally, Petitioner asks this Court to reconsider its order regarding a certificate of appealability. The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253. A prisoner satisfies the standard by demonstrating that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Here, the legal standard for the issuance of a certificate of appealability has not been met because reasonable jurists would not find it debatable that the state court reasonably decided Ground One and that the remaining grounds for relief are procedurally barred and no exception applies. Therefore, the motion to amend or alter the Court's denial of a certificate of appealability is denied.

### V. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Alter or Amend Judgment (Dkt. No. 164).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

December 10, 2019
Charleston, South Carolina